UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:21-cr-00088-KDB-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| MICHAEL SCOTT HOOVER, ) | |
| ) | |
| DEFENDANT. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's Pro Se Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [Doc. 75].

I. BACKGROUND

A. Offense Conduct

In August 2019, law enforcement arrested Defendant Michael Scott Hoover ("Defendant") for eight counts of indecent liberties with a minor in violation of North Carolina law. United States v. Hoover, 95 F.4th 763, 769 (4th Cir. 2024); Doc. 36 at ¶ 7: Presentence Investigation Report (PSR). Following Defendant's arrest, his employer, Wells Fargo, searched his work-issued iPhone 7 Plus, (the "iPhone") and discovered a video of a minor boy masturbating ("Victim One"). Hoover, 95 F.4th at 769; Doc. 36 at ¶ 7. A North Carolina forensic investigator then searched the iPhone pursuant to a search warrant and discovered three more videos and multiple pictures of another boy masturbating ("Victim Two"). Hoover, 95 F.4th at 769. The investigation also uncovered web searches on the iPhone for "selfies boy masterbating [*sic*]," "NAMBLA [North

American Man/Boy Love Association]," and other web searches reflecting sexual interest in minor boys. Id.

Investigators identified both Victim One and Victim Two as relatives of Defendant. Id. When Defendant recorded the videos of Victim One in June and September 2018, Victim One was 17 years old. In August 2019, when Defendant recorded the video of Victim Two, the boy was 12 years old. Id. Victim One did not know he was being recorded on either occasion. Victim Two, however, caught Defendant recording him and asked Defendant to delete the video, which Defendant did not do. Id.

Both Victim One and Victim Two reported long periods of inappropriate comments and sexual abuse by Defendant in the time leading up to the creation of the videos. Id. Each victim reported that Defendant had isolated him at Defendant's home or while on trips and then pressured the minor to masturbate in front of Defendant, despite the minor not wanting to do so. Id. Six other victims came forward and reported to investigators that Defendant had sexually abused them as minor boys prior to or around the same time as Defendant's abuse of Victim One and Victim Two. Id.

### B. Indictment, Trial, Sentencing, and Appeal

On September 16, 2020, Defendant was charged in a Bill of Indictment with two counts of production of child pornography in violation of 18 U.S.C. § 2251(a) – one count for his conduct involving Victim One and the second for his conduct involving Victim Two – and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) for the illicit content of Victim One and Victim Two found on the iPhone. [Doc. 1: Bill of Indictment].

After a one-day trial in April 2021, a jury found Defendant guilty on all three counts. [Doc. 32: Jury Verdict]. Before sentencing, a probation officer prepared a PSR. [Doc. 36]. The

probation officer found that the Defendant is a repeat and dangerous sex offender against minors and, therefore, added five levels to the recommended combined adjusted offense level, yielding an offense level of 45. [Id. at ¶¶ 59, 60]. The probation officer further found that, because the offense level was calculated to be more than 43, the offense level was treated as level 43. [Id. at ¶ 62]. The probation officer further found that, although a total offense level of 43 and a criminal history category of I yielded a guideline imprisonment term of life, the statutorily authorized maximum sentences were less than the minimum of the applicable guideline range.[1] As such, the probation officer recommended that the guideline term of imprisonment was 840 months, or 70 years. [Id. at ¶ 107 (citing U.S.S.G. §5G1.2(b))]. The Court adopted the PSR with minor modifications and sentenced Defendant to 840 months' imprisonment. [Doc. 50 at 2: Judgment; Doc. 51: Statement of Reasons].

On appeal, Defendant argued that this Court erred in several evidentiary rulings, in denying his motion for judgment of acquittal, and in instructing the jury on the elements of child pornography production. Hoover, 95 F.4th at 769. He also contends that this Court procedurally erred in sentencing him to 840 months' imprisonment. Id. The Fourth Circuit affirmed Defendant's conviction and sentence. Id. at 769, 778.

C. **Defendant's Motion to Vacate**

Defendant timely filed the pending motion to vacate. [Doc. 75]. Defendant claims he received ineffective assistance of counsel (1) because his attorney labored under an actual conflict of interest, (2) relative to pretrial advice regarding pleading guilty or accepting a plea deal, and (3) because his attorney failed to obtain an expert to examine whether one or both the videos had been

---

[1] The maximum term of imprisonment on Counts One and Two was 30 years per count. [Doc. 106 at ¶ 106 (citing 18 U.S.C. §§ 2251(a), (e))]. The maximum term of imprisonment on Count Three was 10 years. [Id. (citing 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2))].

3

recorded on and imported from a different device. [Id. at 4-5, 7]. For relief, Defendant asks the Court to vacate his conviction and for a new trial. [Id. at 13].

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Defendant can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). This includes a "'strong presumption' that counsel's strategy and tactics" fall within this range. Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 88 (2011).

To establish prejudice, the petitioner must demonstrate there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. It is not sufficient to show the mere "'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1994) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). In considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

### A. Plea Advice

Defendants are entitled to effective assistance of competent counsel during plea negotiations. McMann v. Richardson, 397 U.S. 759, 771 (1970). Effective assistance of counsel at the plea-bargaining stage requires that defense counsel "communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 566 U.S. 134, 145 (2012). This duty certainly applies where a plea offer is formal and with a fixed expiration date. Id.

Counsel, however, "does not have a general duty to initiate plea negotiations." United States v. Pender, 514 Fed. App'x 359, 361 (4th Cir. 2003). When plea negotiations are undertaken, however, defendants are entitled to the effective assistance of counsel during the plea negotiations. Lafler v. Cooper, 566 U.S. 156, 162-63 (2012). A defendant may show deficient performance where a defendant indicates a willingness to plead guilty but is persuaded by counsel to proceed

5

to trial based on counsel's representation that the defendant will not be convicted due to a defense based on an incorrect legal rule, or where counsel fails to inform a defendant of a favorable plea deal. Id. at 160-63; Frye, 566 U.S. at 145. Moreover, "it is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forego." Libretti v. United States, 516 U.S. 29, 50-51 (1995). Counsel, however, is not ineffective for failing to obtain a plea offer that a defendant is willing to accept. See Weatherford v. Bursey, 429 U.S. 545, 561 (1977) (recognizing "there is no constitutional right to plea bargain").

"To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance," a petitioner must "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Frye, 566 U.S. at 147. Namely, a petitioner must "show the outcome of the plea process would have been different with competent advice." Lafler, 566 U.S. at 163. That is, he must show that "but for the ineffective advice of counsel there is a reasonable probability" that he would have pleaded guilty on terms that the prosecution and the court would have accepted, and the conviction or sentence under the plea "would have been less severe than under the judgment and sentence that in fact were imposed." Id. at 164.

Defendant complains that his attorney advised him that he would receive a sentence of 15 to 17 years regardless of whether he pleaded guilty or went to trial and failed to explain that the United States Sentencing Guidelines provided a two-level reduction for pleading guilty and an additional one-level reduction for a timely plea. [Doc. 75 at 5]. Defendant claims that he "rejected any idea of pleading guilty or accepting a plea agreement" based on his counsel's advice.

6

Defendant further claims that, had he known he was facing a life sentence and the significant impact on the sentencing range of a three-level reduction for a guilty plea, he would have pursued a plea agreement or a guilty plea without such agreement. [Id.].

As noted, counsel has no general duty to initiate plea negotiations, Pender, 514 Fed. App'x at 361, and Defendant does not allege that the Government even offered a formal plea agreement. Moreover, even if Defendant had pleaded guilty with or without a plea agreement, he has not shown any probability that he would have received a downward adjustment for acceptance of responsibility. See United States v. Cruz-Polanco, 797 Fed. App'x 92, 94 (4th Cir. 2019) ("An offense-level reduction for acceptance of responsibility does not result automatically from the entry of a guilty plea."); U.S.S.G. §3E1.1, commentary n. 3 ("A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."). To the extent that Defendant's attorney advised him that he would receive a sentence of 15 to 17 years regardless of whether he pleaded guilty or went to trial, Defendant has not shown prejudice where he has not shown that any plea agreement was offered or that he would have received a downward adjustment for acceptance of responsibility. Furthermore, Defendant does not ask that his conviction and sentence be vacated and that he be allowed to plead guilty. Rather, he asks for a new trial. As such, any claim of prejudice resulting from his decision not to plead guilty and to proceed to trial is inapposite and unavailing.

For these reasons, Defendant has not shown that but for his counsel's alleged ineffective advice there is a reasonable probability he would have pleaded guilty on terms that the prosecution and the court would have accepted, and the conviction or sentence under the plea "would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 566

U.S. at 164. Because Defendant has failed to show ineffective assistance of counsel on this issue, the Court will deny it.

B.  **Failure to Investigate**

"Strickland's objective reasonableness prong requires counsel to conduct appropriate factual and legal inquiries and to allow adequate time for trial preparation and development of defense strategies." Huffington v. Nuth, 140 F.3d 572, 578 (4th Cir. 1998) (citations omitted). In assessing the reasonableness of an attorney's investigation, "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." Wiggins v. Smith, 539 U.S. 510, 527 (2003). Furthermore, our legal system "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). To support an ineffective assistance claim based on the failure to investigate, a petitioner must present specific information to show what favorable evidence the investigation would have produced. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996).

Defendant argues that his attorney was ineffective for failing to hire an expert to determine whether the August 2019 video of Victim Two ("August 2019 Video") and/or the June 2018 video of Victim One ("June 2018 Video") found on the iPhone were imported from elsewhere. [Doc. 75 at 7]. Defendant explains that the Government's expert, Nathan Anderson, testified that iPhones name photo files sequentially in the order in which they are taken, but that the June 2018 Video had the filename IMG_7954.mov despite having been taken fourteen months before the August 2019 Video, which had the filename IMG_0789.mov. [Id.]. Defendant argues that, if his attorney had obtained an expert who determined that one or both the video files had been imported from

elsewhere, the jury would have been reasonably likely to acquit Defendant on the two child pornography production charges. [Id.].

This argument plainly fails. Even if one or both videos had been imported from a different device, there was no inkling of evidence that anyone other than the Defendant took these videos. Rather, the evidence showed that the June 2018 Video of Victim One was taken at Defendant's home on June 19, 2018, with an Apple iPhone 7 Plus. [Doc. 40 at 75-78, 148-49]. The evidence further showed that the August 2019 Video of Victim Two was taken in Mount Mitchell State Park in Yancey County, North Carolina, on the same day that Defendant and Victim Two were together there alone in the woods, by an Apple iPhone 7 Plus and that Victim Two actually witnessed the Defendant taking the video. [Doc. 40 at 58-62, 129-34]. Furthermore, Anderson definitively testified on cross-examination that he was able to identify the iPhone, Defendant's work-issued iPhone, as the device that took the subject videos and pictures. [Doc. 40 at 108-09].

As such, based on this evidence, Defendant's attorney's decision not to retain an expert to determine whether one or both these videos was imported from a different device was entirely reasonable. See Wiggins, 539 U.S. at 527. Furthermore, based on the overwhelming evidence of Defendant's guilt at trial, there was no reasonable likelihood that the jury would have acquitted the Defendant had defense counsel further investigated the putative discrepancy between the timing and filenames of the videos.

Because Defendant has failed to show deficient performance or prejudice relative to any alleged failure to investigate, as alleged, the Court will deny this claim.

C. **Conflict of Interest**

To establish ineffective assistance arising from a conflict of interest, a "petitioner must show (1) that his lawyer was under 'an actual conflict of interest' and (2) that this conflict

9

'adversely affected his lawyer's performance.'" United States v. Nicholson, 475 F.3d 241, 249 (4th Cir. 2007) (quoting Cyler v. Sullivan, 446 U.S. 335, 348 (1980)). "An actual conflict of interest arises 'when a defense attorney places himself in a situation inherently conducive to divided loyalties … If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists.'" Whelchel v. Bazzle, 489 F.Supp.2d 523, 535 (D.S.C. Dec. 18, 2006) (quoting Duncan v. State, 315 S.E.2d 809, 811 (S.C. 1984)).

It is insufficient to show the mere possibility of a conflict, rather "[t]o establish an actual conflict of interest, [Defendant] 'must show that [his] interests diverged with respect to a material factual or legal issue or to a course of action" and that his attorney "actively represented conflicting interests." Id. (quoting Gilbert v. Moore, 134 F.3d 642, 652 (4th Cir. 1998) (en banc). To show adverse effect, Defendant must show three things: (1) there was a "plausible alternative defense strategy or tactic" that counsel could have pursued; (2) "the alternative strategy or tactic was objectively reasonable" based on the facts of the case known by the attorney when the tactical decision was made; and (3) "counsel's failure to pursue that strategy or tactic was linked to the actual conflict." Mickens v. Taylor, 240 F.3d 348, 361 (4th Cir. 2001) (en banc)). Defendant has plainly failed to meet these standards.

Defendant asserts that his attorney previously represented Victim One as a defendant in an assault case and "would have obtained confidential client information" from Victim One. [Doc. 75 at 4]. Defendant further asserts that he provided his attorney with information about Victim One's lack of credibility, but his attorney failed, despite Defendant's urging, to use that or other information known by his attorney to impeach Victim One. [Id.]. On the issue of prejudice, Defendant claims that his attorney's "attorney-client relationship" with Victim One "adversely affected" counsel's representation of the Defendant. [Id.].

To start, Defendant's allegations on this issue are too vague and conclusory to state a claim for relief. United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it is proper to dismiss vague and conclusory allegations). Furthermore, Defendant has not alleged the existence of any facts supporting that his attorney was laboring under an actual conflict of interest. Defendant alleges only that his attorney previously represented Victim One in an unrelated matter. Finally, Defendant has not alleged facts showing that any purported conflict adversely affected his lawyer's performance. Even if Defendant's attorney had information he could have used to impeach Victim One's credibility, Defendant has not shown that such a strategy was objectively reasonable under the circumstances at the time. Rather, common sense suggests that attempting to vigorously undermine the credibility of such a victim carries the very real risk of alienating the jury.[2] Finally, Defendant has not shown that his attorney's decision not to use the information was linked to any putative conflict of interest. See Mickens v. Taylor, 240 F.3d at 361.

As such, Defendant has failed to show deficient performance arising from a conflict of interest. The Court will deny this claim.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong")

---

[2] Defense counsel did, rather, seek to more subtly undermine the credibility of Victim One. That is, on cross-examination, counsel elicited testimony that Victim One continued to drive to and stay with the Defendant despite the Defendant's conduct because the Defendant would supply Victim One with alcohol. [Doc. 40 at 152].

11

(citing <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right. <u>Slack v. McDaniel</u>, 529 U.S. at 484-85. As a result, the Court declines to issue a certificate of appealability. <u>See</u> Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## **ORDER**

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 75] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.

**IT IS SO ORDERED**.

Signed: November 13, 2025

Kenneth D. Bell
United States District Judge